```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF INDIANA
                          HAMMOND DIVISION


CHARLES ENSTROM,                 )
                                 )
          Plaintiff              )
                                 )
     v.                          )    Case No. 2:05-cv-206
                                 )
CITY OF PORTAGE WATER            )
RECLAMATION BOARD and RICKY      )
DODD in his individual and       )
official capacity                )
                                 )
                                 )
          Defendants             )
```

OPINION AND ORDER

This matter is before the court on the Motion for Summary Judgment filed by the defendants, Ricky Dodd individually and as superintendent of the Portage Wastewater Treatment Plant, and the City of Portage Water Reclamation Board, on April 28, 2006. For the reasons set forth below, the motion is **GRANTED**.

Background

The City of Portage Water Reclamation Board is a subdivision of the City of Portage and is responsible for operating the city's wastewater treatment facility. (Complaint p. 1)  Defendant Ricky Dodd is superintendent of the facility, and Dan Slawnikow-ski is the plant's operations coordinator. (Complaint p. 1; Deposition of Charles Enstrom p. 23)

The plaintiff, Charles Enstrom, applied for the position of facility operator in response to a notice posted at Portage City Hall in May 2002. (Enstrom Dep. pp. 5, 13)  Approximately two weeks later, Enstrom was interviewed by Dodd and Slawnikowski, who provided him with a description of the facility operator

position. (Enstrom Dep. p. 14) The position necessitated that Enstrom acquire a commercial drivers license. (Enstrom Dep. p. 17). Enstrom later discussed these requirements with Slawnikow-ski, who assured him that upon getting this license, he would be employed at the plant. (Enstrom Dep. p. 16)  Enstrom again met with Dodd and Slawnikowski immediately after being licensed and was told to begin his employment at the plant on April 15, 2002. (Enstrom Dep. p. 5)

Prior to these interviews, Enstrom had not met Dodd or Slawnikowski. (Enstrom Dep. p. 16) Enstrom also testified that he had not met any member of the Portage Water Reclamation Board with the exception of Portage Mayor Doug Olson. (Enstrom Dep. p. 17)  Enstrom met Olson approximately 12 years prior to Olson's election as mayor, when Enstrom served as coach of the mayor's son in the Portage Youth Basketball League. (Enstrom Dep. p. 17) Enstrom did not maintain a personal relationship with the mayor nor was he involved with Olson politically. (Enstrom Dep. p. 17)

Enstrom considered himself a "political hiree" and believed that Dodd did as well. (Unemployment Insurance Hearing Transcript ("Transcript") p. 219)  Enstrom testified that "it was not until I was there for, well, about three or four months until I was told that somebody said something to somebody that made him hire me." (Transcript p. 219)  Enstrom, however, denied that he had any political influence with the mayor. (Transcript p. 220) Nevertheless, co-workers Kenny Holder, Michael McBride, and Michael Sobczak each stated that Enstrom was considered a politi-

2

cal appointee. Holder explained Enstrom's termination by stating that "It was my impression that there were other reasons, perhaps political." (Holder Affidavit)  McBride stated that "I believe Charles was targeted for termination due to his political connections. (Political hire-ee, recommended for hire by political affiliation.) Ricky Dodd concidered [sic] Charles a Political hire and Ricky told me that he hated political appointees." (McBride Affidavit)  Finally, Sobczak testified that "Charles was targeted for termination from the onset of his employ due to a political affiliation. Superintendent Ricky Dodd did not respect employees that were politically appointed. Charles was considered a political hire." (Sobczak Affidavit)

Enstrom was employed at the plant from April 2002 until December 5, 2003, including an initial one-year probationary period. (Response p. 2)  Enstrom received two "write-ups" during this probationary period and two more prior to his termination. (Resp. p. 3)  The first of these write-ups, entitled Employee Warning Report, was issued by Slawnikowski on October 29, 2002. (October 2002 Report)  In the report, Slawnikowski cited Enstrom's failure to log in for his shift, record required information such as sludge depth readings, and pressure wash equipment and work areas. (October 2002 Report)

In January of 2003, still within the probationary period, Slawnikowski filed a second Employee Warning Report stating that Enstrom failed to hose off truck tires which left sludge on the roadway near the plant. (January 2003 Report; Transcript p. 174)

3

In August 2003, Slawnikowski cited Enstrom for overloading the plant's north digester for a period of 90 minutes, rather than the required period of six to eight minutes. (Transcript p. 249; August 2003 Report)  Finally, in December 2003, Slawnikowski cited Enstrom for failing to maintain the proper amount of raw influent sample volume in the plant's treatment equipment due to a blocked suction line. (December 2003 Report)

At the conclusion of his probationary period, in April and May 2003, Enstrom filed three complaints with the City of Portage Human Resources Department. (Transcript p. 220; Resp. p. 3)  Enstrom asserts that the incidents described in these complaints "establish a pattern of harassment resulting in a hostile work environment." (Resp. p. 3)  Though Enstrom's briefing does not discuss these incidents individually, the record suggests that these include an inability to alter his schedule in order to coach a little league all-star team, the denial of his request for time off to attend the funeral of a nephew, an incident in which Dodd, in the presence of Enstrom and Slawnikowski, threw papers and other items from a desk and shelves to the floor and then asked Slawnikowski to get it cleaned up, and the lack of response to a request to have new eyeglasses provided when Enstrom's were broken while on the job. (Enstrom Dep. pp. 23, 29, 30, 35). In his testimony, Enstrom also noted that during a six-week training assignment to the plant's maintenance department, he was not invited to attend a tool show that other members of that department attended. (Enstrom Dep. p. 50)  In addition,

4

Enstrom complained of his treatment after he suffered a twisted ankle while at work operating a lawn mower. (Enstrom Dep. p. 44) Enstrom completed his shift that day and, at the advice of a co-worker, noted the injury in the plant's daily logbook. (Enstrom Dep. p. 45)  The following day, Enstrom's day off, he had an X-ray taken but received no further treatment. (Enstrom Dep. p. 45) A dispute later arose over who had the responsibility to pay for the cost of the x-ray between Enstrom's medical insurance provider and the plant's workers' compensation carrier. (Enstrom Dep. p. 43) Enstrom alleges that the dispute arose because Dodd represented to the workers' compensation carrier that no injury had occurred. (Enstrom Dep. p. 45)  Ultimately, the workers' compensation carrier paid the cost of the x-ray. (Enstrom Dep. p. 45)

Following the December 2003 Employee Warning Report, Slawnikowski met with Dodd to discuss terminating Enstrom's employment with the plant. (Transcript p. 187)  Dodd, in turn, sought approval from the City of Portage Human Resources Department, who confirmed the decision to fire Enstrom. (Transcript p. 163)  Enstrom was fired on December 5, 2003.

On May 5, 2005, Enstrom filed a single-count complaint asserting that Dodd and the Portage Water Reclamation Board violated his First Amendment rights by harassing, disciplining, and terminating him on the basis of his political affiliation.

## Discussion

Pursuant to Federal Rule of Civil Procedure 56(c), summary

judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *See* ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322-23, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986); ***Lawrence v. Kenosha County***, 391 F.3d 837, 841 (7th Cir. 2004); ***Branham v. Snow***, 392 F.3d 896, 901 (7th Cir. 2004); ***Windle v. City of Marion***, *Indiana*, 321 F.3d 658, 660-61 (7th Cir. 2003), *cert. denied*, 540 U.S. 873, 124 S.Ct. 873, 157 L.Ed.2d 133 (2003).  The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party.  ***Adickes v. S.H. Kress & Company***, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); ***Lawrence***, 391 F.3d at 841. A fact is material if it is outcome determinative under applicable law.  ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); ***Ballance v. City of Springfield, Illinois Police Department***, 424 F.3d 614, 616 (7th Cir. 2005); ***Hottenroth v. Village of Slinger***, 388 F.3d 1015, 1027 (7th Cir. 2004); ***Palmer v. Marion County***, 327 F.3d 588, 592 (7th Cir. 2003).  Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts.  ***Spiegula v. Hull***, 371 F.3d 928, 935 (7th Cir. 2004); ***Hines v. British Steel Corporation***, 907 F.2d 726, 728 (7th Cir. 1990).  Finally, summary judgment "will not be defeated simply because motive or intent are involved."  ***Roger v. Yellow***

6

*Freight Systems, Inc*., 21 F.3d 146, 148 (7th Cir. 1994).  *See also* *Miller v. Borden, Inc*., 168 F.3d 308, 312 (7th Cir. 1999); *Plair v E.J. Brach & Sons, Inc.*, 105 F.3d 343, 346 (7th Cir. 1997); *United Association of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1268 (7th Cir. 1990).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.
>
> *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511

See also *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 149-151, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105, 120-22 (2000) (setting out the standard for a directed verdict); *Celotex Corp*., 477 U.S. at 322-323, 106 S.Ct. at 2553; *Branham*, 392 F.3d at 901; *Lawrence*, 391 F.3d at 841; *Hottenroth*, 388 F.3d at 1027 (stating that a genuine issue is one on which "a reasonable fact finder could find for the nonmoving party"); *Schuster v. Lucent Technologies, Inc*., 327 F.3d 569, 573 (7th Cir. 2003) (stating that a

7

genuine issue exists and summary judgment is inappropriate if there is sufficient evidence for a jury to return a verdict for the nonmoving party).

Enstrom is unable to support his allegations that he was subjected to a pattern of retaliation and ultimately terminated due to his political affiliation. The First Amendment prohibits conditioning public employment upon political affiliation. ***Rutan v. Republican Party of Illinois***, 497 U.S. 62, 64, 110 S.Ct. 2729, 111 L.Ed.2d. 52 (1990); ***Branti v. Finkel***, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d. 574 (1980); ***Elrod v. Burns***, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d. 547 (1976). This prohibition does not apply when the "nature of [the] job makes political loyalty a valid qualification" for the effective performance of the position. ***Riley v. Blagojevich***, 425 F.3d 357, 359 (7th Cir. 2005).

In order to establish a prima facie case that a plaintiff was disciplined and eventually terminated on the basis of political affiliation, the plaintiff must show that affiliation was a substantial factor leading to the discharge. ***Garrett v. Barnes***, 961 F.2d 629, 632 (7th Cir. 1992)(*citing* ***Mount Healthy City Board of Education v. Doyle***, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d. 471 (1977).  Because the plaintiff's burden extends beyond merely "showing that he carried the political card of the opposition party or that he favored the defendant's opponent in the election," the plaintiff must demonstrate that political affiliation was a motivating factor in the termination. ***Nelms v. Modisett***, 153 F.3d 815, 818 (7th Cir. 1998). Rather, the plain-

8

tiff must show a causative relationship between his political affiliation and the employer's actions. **Massey v. Johnson**, 457 F.3d 711, 716 (7th Cir. 2006). The plaintiff need not show this causal link was a but-for factor, and he may make out a prima facie case with circumstantial proof "such as the timing of events or the disparate treatment of similar individuals." **Massey**, 457 F.3d at 717.

Once the plaintiff meets his burden, the defendant may demonstrate a legitimate, nonpolitical reason for the discharge. **Garrett**, 961 F.2d at 633 ("Barnes does not have to prove a legitimate reason for firing Garrett until Garrett has come forth with sufficient evidence to support a prima facie case of retaliation.").

The plaintiff's initial requirement to establish a prima facie case is to demonstrate that the defendant was aware of the plaintiff's political association. **Garrett**, 961 F.2d at 622 (*citing* **Cusson-Cobb v. O'Lessker**, 953 F.2d 1079 (7th Cir. 1992)); **Nelms**, 153 F.3d at 815 ("Nelms first must prove that defendants knew of his Republican party membership.").

Neither Enstrom nor the defendants claim that Enstrom's position as facility operator was the type of position for which political affiliation is a permissible qualification. The parties further have not provided evidence to show that Enstrom was hired in response to any action by Portage Mayor Doug Olson. The parties acknowledge that Enstrom had no personal relationship with the mayor and that his only connection to Olson occurred 12

9

years prior, when Enstrom coached the basketball team on which Olson's son was a player. Consequently, there is no evidence in the record regarding Enstrom's actual political affiliation.

Instead, Enstrom bases his claim on the assertion that Dodd, apparently mistakenly, believed that Enstrom was a "political appointee" and that this misperception was the motivating factor behind Enstrom's termination. Consequently, Enstrom can succeed in establishing a prima facie case only by showing that this mistaken perception of his political status was a motivating factor in the decision to discipline and ultimately terminate him. Enstrom, however, is unable to show that any supervisor, even mistakenly, regarded him as a political appointee. *See e.g.* ***Rivera-Cotto v. Rivera***, 38 F.3d 611 (1st Cir. 1994).

In supporting the allegation that Dodd believed Enstrom was a political appointee, Enstrom has offered little more than his statement that "somebody said something to somebody." Enstrom has submitted the affidavits of co-workers Kenny Holder, Michael McBride, and Michael Sobczak, which provide little additional support. Kenny Holder's vague suggestion that there were other, "perhaps political" reasons, is pure speculation, and even if true, does not implicate Dodd. Similarly, both McBride and Sobczak purport to testify that Dodd believed Enstrom was a political appointee. However, their testimony does not indicate a basis from which the court can conclude these statements are anything but speculation and outside the realm of admissible testimony. *See* ***Payne v. Pauley***, 337 F.3d 767, 772 (7th Cir. 2003)

10

("[T]hese affidavits fail to thwart summary judgment because they are not based on personal knowledge as required by both the Federal Rule of Civil Procedure on summary judgment, Rule 56(e) . . . and by Federal Rule of Evidence 602 (A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.")) *See also* **Nelms**, 153 F.3d at 819 ("Nelms cannot rely on the speculation or opinions of non-decision makers as proof that Defendants fired him because of his political affiliation.") (internal citations and quotations omitted).

The only remaining testimony Enstrom relies on to support the conclusion that Dodd considered him a political appointee is Enstrom's own testimony given at a prior unemployment hearing. Enstrom's subjective belief that Dodd considered him a political appointee, unsupported by further evidence, is simply more speculation as to Dodd's state of mind. Like the statements in his co-workers' affidavits, Enstrom's bare speculation is not sufficient to defeat summary judgement . *See* **Payne**, 337 F.3d at 772 (collecting cases); **Vukadinovich v. Board of School Trustees of North Newton School Corporation**, 278 F.3d 693 (7th Cir. 2002). Consequently, while there is some evidence that Dodd disfavored political appointees, there is no reliable evidence that he considered Enstrom such an employee.

It follows that, if Enstrom cannot show that Dodd held this misperception, he cannot prove that Dodd acted upon it. Enstrom provides no evidence that the conditions of his employment were

11

politically motivated. Instead, Enstrom argues that some of the incidents cited to in the employee warning reports that he received were petty in nature. However, because Enstrom has failed to make out the first step of a prima facie case, his challenge to the defendants' legitimate reasons for terminating him is premature. The defendants' stated reasons are subject to challenge as pretextual only if Enstrom had met the initial burden. *See **Garrett***, 961 F.2d at 633 ("Garrett could be fired for a good reason of for no reason at all, so long as he was not fired because of his constitutionally protected activities.").

Because Enstrom has not shown that his treatment at the Portage Wastewater Treatment Plant was based upon even an inaccurate picture of his political affiliation, his claim necessarily fails.

_____

For the foregoing reasons, the Motion for Summary Judgment filed by the defendants, City of Portage Water Reclamation Board and Ricky Dodd, on April 28, 2006 is **GRANTED**.

ENTERED this 21st day of September, 2006


                                s/ ANDREW P. RODOVICH
                                   United States Magistrate Judge